1
2
3
4
5
6
7

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARK MAYES,

        Plaintiff,

    v.

ALEXANDER OHASHI and ACE PARKING,

        Defendants.

No. C18-0696 RSM

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

## I.     INTRODUCTION

This matter comes before the Court on Defendants Alexander Ohashi and Ace Parking's Motion for Summary Judgment against pro se Plaintiff Mark Mayes. Dkt. #35. Mr. Mayes claims that Defendants discriminated and retaliated against him because of his race and has also moved for summary judgment. Dkt. #39. The Court finds oral argument unnecessary to resolve the underlying issues. Having reviewed Defendants' Motion, Plaintiff's Response, Defendants' Reply, and all documents submitted in support thereof, the Court GRANTS Defendants' Motion for Summary Judgment and dismisses Plaintiff's claims.

## II. BACKGROUND

Plaintiff Mark Mayes is an African American man who was employed by Defendant Ace Parking ("Ace") from December 8, 2017 until February 24, 2018. Ace is a valet parking business that manages parking for convention centers, hotels, special events, and other parking venues. Dkt. #35-2 at ¶3. Ace hired Mr. Mayes to work as a valet driver at the Fairmont hotel parking garage. Dkt. #35-1 at 5. Defendant Alexander Ohashi was the assistant manager at the Fairmont Hotel location who supervised Mr. Mayes. Dkt. #35-4 at 1.

During Mr. Mayes' employment, most of Ace's employees were hired to work part-time to handle the busy holiday season. Dkt. #35-3 at 2. Ace claims this included Mr. Mayes, who was scheduled to work 23 hours during his first week starting on Monday, December 11, 2017. *Id.* at 5. Work schedules would run Sunday through Saturday. Ace managers would email the employees the Friday before the work week and post the schedules in the Ace parking lot. *Id.* at 2. Over the second, third, and fourth weeks of his employment with Ace, Mr. Mayes was scheduled to work 36.5 hours, 41.5 hours, and 30 hours respectively. *Id.* at 6-8.

On Saturday, December 16, 2017, before the start of his third week at Ace, Mr. Mayes texted Mr. Ohashi regarding alleged discriminatory behavior by other Ace employees. Dkt. #35-1 at 25. Specifically, Mr. Mayes claimed that other employees were "making racist snarky comments while I was there." *Id.* Mr. Ohashi responded, "lmk who said something" to which Mr. Mayes responded, "I don't know the names ill [sic] get them for you once i ask them." *Id.* at 26." Mr. Ohashi states that Mr. Mayes never followed up with him regarding the names of the employees referenced in his December 16 text. Dkt. #35-4 at 2.

Mr. Mayes worked his last shift on January 3, 2018, after which point he stopped showing up for shifts. *Id.* at 8; Dkt. #35-2 at ¶4. Mr. Mayes was scheduled to work 16.5 hours the

following week, starting Sunday, January 7, 2018 through Saturday, January 13, 2018. Dkt. #35-4 at 9. On February 24, 2018, Mr. Mayes emailed Mr. Ohashi stating, "I would like to stop working to attend classes next month." Dkt. #35-1 at 20. Mr. Mayes admits that nobody at Ace terminated him. *Id.* at 40. He claims that he quit because his hours were cut and the employees continued being "sarcastic." Dkt. #35-1 at 39.

On January 21, 2018, Mr. Mayes emailed Ryan Sidlowski, a site manager for Ace Parking, stating that he was not properly paid for his hours between December 16, 2017 and December 31, 2017. Dkt. #38-1 at 2. Specifically, Mr. Mayes claimed that his paycheck was incorrect since he had worked 120 hours during that pay period but only received payment for 27.96 hours. *Id.* Mr. Mayes later texted Mr. Ohashi that he only worked 112 hours for that pay period, not 120. Dkt. #41-1 at 2. On January 22, 2018, Ace issued a separate paycheck to Mr. Mayes for 21 hours. Dkt. #38-4 at 9. Mr. Mayes acknowledged this paycheck for 21 hours was "backpay" for his work in December. Dkt. #38-3 at 2. Mr. Sidlowski also responded to Mr. Mayes' email on January 24, 2018 stating "Alex and I got it sorted out, and there will be a check for you here in the next couple days." *Id.* On February 7, 2018, Ace issued payment for an additional 81 hours for Mr. Mayes' work between December 16 and December 31, 2017. Dkt. #38-2 at 2. In total, Ace paid Mr. Mayes for 129.96 hours for the pay period from December 16 through December 31, 2017.

In April 2018, Mr. Mayes filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation while employed at Ace. Dkt. #35-1 at 52-55. On April 23, 2018, the EEOC dismissed Mr. Mayes' charge and provided him a right to sue letter. Dkt. #35-1 at 44. On May 15, 2018, Mr. Mayes, proceeding pro se, filed this employment discrimination action against Ace and Mr. Ohashi in the U.S. District Court for the

Western District of Washington. Dkt. #1. Mr. Mayes alleges that Defendants engaged in disparate treatment because of his race and retaliation for reporting racial discrimination. Dkt. #5 at 3. Specifically, he claims that Defendants reduced his work hours from full time to one day a week after he complained that a coworker made a racist remark. *Id.* He also states in his Response that Ace delayed payment for "at least a month" and failed to pay him for all the hours he worked. Dkt. #36 at 1. He seeks monetary and punitive damages in the amount of $1,000,000. Dkt. #5 at 6. On January 9, 2020, Defendants moved for summary judgment. Dkt. #35.

### III. DISCUSSION

#### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, (1986). Material facts are those which might affect the outcome of the suit under governing law. *Id.* at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.,* 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy,* 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers,* 969 F.2d at 747, *rev'd on other grounds,* 512 U.S. 79 (1994). However, the non-moving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof"

to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the non-moving party fails to properly support an assertion of fact or fails to properly address the moving party's assertions of fact, the Court will accept the fact as undisputed. Fed. R. Civ. P. 56(e). As such, the Court relies "on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1278–79 (9th Cir. 1996) (quotation marks and citations omitted). The Court need not "comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).

In the context of employment discrimination claims, "[s]ummary judgment in favor of the employer in discrimination cases is often inappropriate because the evidence will generally contain reasonable but competing inferences of both discrimination and nondiscrimination that must be resolved by a jury [.]" *Kuyper v. State,* 79 Wash. App. 732, 739, 904 P.2d 793 (1995) (internal quotation omitted). However, summary judgment is proper if a plaintiff produces no evidence that an employer's decision was motivated by an intent to discriminate. *Id*. A plaintiff "must do more than express an opinion or make conclusory statements." *Marquis v. City of Spokane,* 130 Wash.2d 97, 105, 922 P.2d 43 (1996) (citation omitted). "The worker must establish *specific and material facts* to support each element of his or her prima facie case." *Id*. (citation omitted) (emphasis added). A question of fact can be determined as a matter of law "only where reasonable minds could reach but one conclusion." *Davis v. West One Automotive Group,* 140 Wash. App. 449, 166 P.3d 807, 811 (2007) (citation omitted).

For the reasons set forth below, the Court finds that Mr. Mayes has failed to raise any genuine dispute of fact to survive summary judgment. Although the complaint does not explicitly state under what statutes Mr. Mayes brings his claims, Defendants have interpreted his general

allegations of "disparate treatment" and "retaliation" as brought under 42 U.S.C. § 2000e ("Title VII"), 42 U.S.C. § 1981 of the Civil Rights Act ("Section 1981"), and the Washington Law Against Discrimination ("WLAD"). Dkt. #35 at 9-10. Mr. Mayes does not challenge Defendants' understanding of his claims in his Response. *See* Dkt. #36.

### B. Disparate Treatment

Mr. Mayes alleges racial discrimination in violation of Title VII, Section 1981 and the WLAD. Dkt. #5 at 3. Under Title VII, an employer shall not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to . . . the full and equal benefit of all laws . . . as is enjoyed by white citizens." The WLAD similarly bars discharge or discrimination in the terms or conditions of employment because of race or national origin. RCW 49.60.180.

Because there will rarely be direct evidence of discrimination, discrimination claims are often considered under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 470 F.3d 827, 837–38 (9th Cir. 2006) (affirming that Title VII substantive standards apply to a Section 1981 claim); *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cnty.*, 189 Wash.2d 516, 404 P.3d 464, 470–71 (2017) (applying *McDonnell Douglas* framework to claims under the WLAD). Because Washington courts look to federal law in interpreting the WLAD, *see id.*, the Court will consider this motion under federal law, considering Washington case law where appropriate.

Under *McDonnell Douglas*, a plaintiff bears the initial burden of establishing a prima facie case by raising an inference of discrimination—a "presumption that the employer unlawfully discriminated against the employee." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–54 (1981). After this prima facie case is made, the burden "then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (quoting *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985), *as amended*, 784 F.2d 1407 (1986)). If the defendant succeeds, then to defeat summary judgment, the plaintiff must demonstrate that the "articulated reason is a pretext for unlawful discrimination by 'either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Aragon v. Republic Silver State Disposal, Ind.*, 292 F.3d 654, 658–9 (9th Cir. 2002) (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quotation marks and string citation omitted). "Although intermediate burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253).

1. Plaintiff's Prima Facie Case

An inference of discrimination may be established "in whatever manner is appropriate in the particular circumstances." *Diaz v. Am. Telephone & Telegraph*, 752 F.2d 1356, 1361 (9th Cir. 1985). "The requisite degree of proof necessary to establish a prima facie case for [§ 1981] claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis*, 26 F.3d at 889 (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987), *cert. denied*, 498 U.S. 939, (1990)). In disparate treatment cases, the inference is often

established by the plaintiff showing that: (1) he is a member of a protected class, (2) he was qualified for his position, (3) he was subject to an adverse employment action, and (4) similarly situated employees outside the protected class were treated more favorably. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). Alternatively, instead of providing comparator evidence of "similarly situated" employees, a plaintiff may provide evidence of "other circumstances surrounding the adverse employment action" that give rise to an inference of discrimination. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

Defendants do not dispute that Plaintiff has satisfied the first and second elements, given that Mr. Mayes is an African American and Ace had "no imminent plans to terminate Mr. Mayes" based on his job performance. Dkt. #35 at 11. The Court's analysis therefore focuses on the third and fourth elements.

Mr. Mayes has alleged two adverse employment actions by Ace: (1) cutting his scheduled hours to the point where he quit; and (2) refusing to pay him for his hours. First, Mr. Mayes maintains that his hours were cut from "12 to 16 hours a day, every day, to being on the schedule one day a week working 4 hours." Dkt. #36 at 2. The work schedules provided by Defendants directly contradict Mr. Mayes' claims. Because Mr. Mayes has produced no evidence of his own to refute Defendants' claims, the Court will accept these hours reflected in the work schedules as undisputed. Fed. R. Civ. P. 56(e). These schedules show that Mr. Mayes typically worked shifts from 9:00AM to 4:30PM (7.5 hours) or from 10AM to 6PM (8 hours). *See* Dkt. #35-5 at 5-12. None of these work schedules show that Mr. Mayes was scheduled for less than eight hours a week. *See id.*

Although the work schedules contradict the specifics of Mr. Mayes' factual claims, it is apparent that Ace reduced Mr. Mayes' scheduled hours the week after the Christmas holidays

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT –8

ended. Starting December 31, 2017, Ace began scheduling Mr. Mayes for fewer hours compared to the previous two weeks. *Id.* at 8. During this time, at least three other valets continued to receive more scheduled hours than Mr. Mayes. *See id.* at 5-12. While there remains a material dispute of fact as to whether Ace initially hired Mr. Mayes to work part-time or full-time, it is undisputed that Mr. Mayes was the only African American valet working at Ace at this time. There are significant weaknesses with Plaintiff's argument, but the record supports that some individuals outside of Plaintiff's protected class continued to receive more scheduled hours. Because Plaintiff's burden is minimal, the Court finds that Mr. Mayes has established an inference of unlawful discrimination with respect to his reduced hours. *Shokri v. Boeing Co.*, 311 F. Supp. 3d 1204, 1211 (W.D. Wash. 2018), *aff'd*, 777 F. App'x 886 (9th Cir. 2019) ("The requisite degree of proof necessary to establish a prima facie case . . . is minimal") (internal quotations omitted).

Turning to the second alleged adverse employment action, Mr. Mayes claims that Ace refused to pay him until after he stopped working and ignored his repeated requests for payment for a month. Dkt. #36 at 1; *see also* Dkt. #39 at 2. As an initial matter, Mr. Mayes never mentioned this allegation in his initial complaint. *See* Dkt. #5 at 3. Instead, he appears to raise it for the first time in his Response. Dkt. #36 at 1 ("I stated in my deposition that my desperate [sic] treatment was 'not getting paid for a month.'"). Accordingly, the Court is not convinced that this claim is properly before the Court. *See Wasco Products, Inc. v. Southwall Technologies*, 435 F.3d 989, 992 (9th Cir. 2006) (allegations of a new claim or theory for relief asserted in opposition to a summary judgment motion, but not in the complaint, cannot serve as a basis for avoiding summary judgment); *see also Trishan Air, Inc. v. Federal Ins. Co.*, 635 F.3d 422, 435 (9th Cir. 2011) (claim raised in opposition to summary judgment motion, but not in complaint, was not properly before the district court).

Nevertheless, because Defendants have addressed this point in their briefing, the Court will consider it here.  Based on the provided payroll information, emails between Mr. Mayes and his managers, and deposition transcripts, Mr. Mayes was apparently paid for 129.96 hours for the pay period starting December 16, 2017 through December 31, 2017.  *See* Dkt. #38-1 at 2 (January 21, 2018 email from Mr. Mayes); Dkts. #38-4 at 9 (January 22, 2018 check for 21 hours for "backpay"); Dkt. #38-2 at 2 (February 7, 2018 check for 81 hours).  While Mr. Mayes insists he was not paid for most of his work and "none of this is right," Dkt. #38-3 at 2, he has provided no support for his assertions that he worked without pay and was shorted "more than 1,500 from [his] first check." Dkt. #39 at 1.  Mr. Ohashi also texted Mr. Mayes on or around January 23, 2018 to clarify what remaining hours he was owed. Dkt. #41-1 at 2.  The evidence plainly contradicts Mr. Mayes' claims, given that Ace responded within three days of Mr. Mayes' email and compensated him for more than the 120 hours he claimed he was owed.  Supplemental evidence produced on March 5, 2020, further supports Ace's claims that it did not unilaterally delay processing Mr. Mayes' payments.  On the contrary, Ace was delayed in processing a check for 21 additional hours Mr. Mayes claimed he worked during the December 31, 2018 because Mr. Mayes failed to submit his time card on time. Dkt. #43-1 at 9.

Construing these facts in a light most favorable to Plaintiff, nothing in the record supports Mr. Mayes' prima facie case that Ace unilaterally delayed or withheld his payment. Mr. Mayes provides no evidence of his own to contradict this payroll information.  Instead, he claims that summary judgment must be delayed or denied pursuant to Rule 56(d) because of Defendants' failure to produce any payroll information during discovery. Dkt. #36 at 1 (citing Fed. R. Civ. P. 56(d)).  Federal Rule of Civil Procedure 56(d) allows a court to deny or defer consideration of a motion for summary judgment where the nonmovant shows by affidavit or declaration that it

cannot present facts essential to justify its opposition. To obtain such relief, the party requesting such relief must establish: (1) specific reasons why the alleged evidence was not discovered or obtained earlier in the proceedings ("good cause"); (2) specific facts it hopes to elicit from additional discovery; (3) that the facts sought actually exist; and (4) that these sought-after facts would overcome the opposing party's Motion for Summary Judgment. *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996). The purpose of Rule 56(d) relief is to prevent the nonmoving party from being "railroaded" by a summary judgment motion that is filed too soon after the start of a lawsuit for the nonmovant to properly oppose it without additional discovery. *See Celotex Corp.*, 477 U.S. at 326.

Mr. Mayes' unsupported claim that Defendants failed to produce any payroll information during discovery fails to satisfy the requirements of Rule 56(d). Mr. Mayes never specifies what facts he hoped to obtain from these payroll records, nor does he provide a good cause explanation for his failure to obtain the documents earlier in the proceedings. On the contrary, Defendants' Objections and Response to Plaintiff's First Request for Production show that they agreed to produce Mr. Mayes' paystubs. *See* Dkt. #38-4 at 4, 7-10. Emails between Defendants' counsel and Mr. Mayes likewise reflect that despite requesting a discovery conference in February 2020, Mr. Mayes failed to attend. Dkt. #41-2 at 2. Furthermore, after Ace located additional payroll information on March 4, 2020, this information was promptly produced to Plaintiff the following day. Dkt. #43 at ¶3. As of the date of this Order, Mr. Mayes has filed no response addressing these records. Upon review, these records produced March 5, 2020 support Defendants' argument that payroll discrepancies were a consequence of Mr. Mayes' own failure to timely submit his time

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT –11

cards. For these reasons, the Court declines to delay or deny Defendants' summary judgment motion to allow additional time for discovery.

    2.   <u>Defendant Had Legitimate Business Reasons for its Actions</u>

The record establishes that Defendants had legitimate business reasons for reducing Plaintiff's hours starting the week of December 31, 2017. First, Ace explains that the cyclical nature of the valet business means that fewer valets are needed after the holidays. Dkt. #35-4 at 1. The work schedules reflect this cyclical nature. The number of valets was cut from 22 to 17, and only two valets—Mr. Hartman and Mr. Salvador—were consistently scheduled for more than 40 hours after the holidays. *See* Dkt. #35-3 at 8-11. Indeed, even though Mr. Mayes' hours were reduced over the next two weeks from 43.5 to 30 to 16.5, he was still working more hours than nearly all the other valets. *Id.* at 8-9.

To the extent that Ace continued to cut Mr. Mayes' hours, Ace explains that Mr. Mayes stopped showing up to work after January 3, 2018. Dkt. #35-2 at ¶4. The week of January 3, Mr. Mayes was scheduled to work 30 hours. Dkt. #35-3 at 8. After he stopped coming to work, Ace continued to schedule Mr. Mayes for shifts but for shorter lengths. *See* Dkt. #35-3 at 9-12 (16.5 hours for week of January 7; 15 hours for week of January 14, 8 hours for week of January 21, and 16 hours for week of January 28). Mr. Mayes has neither denied that he stopped coming to work after January 3, 2018, nor has he provided any evidence to refute Defendants' claims. Accordingly, the Court accepts this fact as undisputed. Fed. R. Civ. P. 56(e). Because Mr. Mayes was no longer showing up to his shifts, Defendants had a legitimate reason to reduce his hours.

    3.   <u>Defendants' Reasons are Not Pretext for Unlawful Discrimination</u>

With Defendants articulating legitimate business reasons for cutting Mr. Mayes' hours, the burden shifts back to Mr. Mayes to present evidence establishing that those reasons are merely

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT –12

a pretext masking intentional discrimination. Pretext can be established by showing "that a discriminatory reason more likely motivated the employer" or "that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. A plaintiff may rely on direct evidence which proves discriminatory animus on its own—typically discriminatory statements or actions—or circumstantial evidence which "requires an additional inferential step to demonstrate discrimination." *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005). "'[V]ery little' direct evidence of [a] discriminatory motive is sufficient." *Winarto v. Toshiba America Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001). But where circumstantial evidence is used, "a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) (citations omitted).

On this record, a reasonable jury could not conclude that Ace intentionally discriminated against Plaintiff. Mr. Mayes has presented no evidence to demonstrate a genuine dispute as to pretext. He has offered no direct evidence of a discriminatory motivation by Ace, nor has he provided circumstantial evidence that would allow a reasonable jury to find that Defendant's otherwise legitimate business reasons were merely a pretext for intentional discrimination. In response to Defendants' motion, he claims that the work schedule hours on the time sheets are "incorrect" and reiterates that his hours were cut down to four per week. Dkt. #36 at 1-2. Mr. Mayes' conclusory statements, without any factual support, are insufficient to survive summary judgment. *Keenan*, 91 F.3d at 1278–79.

Lastly, the Court notes that under the WLAD, a plaintiff is only required to show "that a reasonable jury could find that discrimination was a *substantial factor* in the employer's adverse employment action." *Scrivener v. Clark*, 181 Wash.2d 439, 334 P.3d 541, 544 (2014) (citing *Riehl*

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT –13

*v. Foodmaker, Inc.*, 152 Wash.2d 138, 94 P.3d 930 (2004)) (emphasis added). However, because Plaintiff cannot demonstrate unlawful discrimination on the record, the Court does not need to consider the differences between the WLAD and his federal discrimination claims under Section 1981 and Title VII. *Shokri*, 311 F. Supp. 3d at 1221. For these reasons, Mr. Mayes' disparate treatment claims fail as a matter of law.

**C. Retaliation**

In addition to his disparate treatment claims, Plaintiff claims that Ace retaliated against him for reporting discriminatory conduct in violation of Title VII and the WLAD. Dkt. #5 at 3. Retaliation claims are also considered under the burden shifting framework of *McDonnell Douglas*. *See Surrell v. Cal. Water Service Co.*, 518 F.3d 1097 (9th Cir. 2008). To make out a prima facie case of retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). Title VII retaliation actions prohibit employers from discriminating against employees who "opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). The plaintiff must establish that his or her protected activity "was a but for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). "Because Washington courts look to interpretations of federal law when analyzing retaliation claims," the Court examines Mr. Mayes' retaliation claim under federal law. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002) (citing *Graves v. Dept. of Game*, 76 Wash. App. 705, 887 P.2d 424 (1994)).

Like his disparate treatment claims, the record does not support a prima facie case of retaliation as to Mr. Mayes' delayed or withheld paychecks. Defendants have provided evidence

to show that any payroll errors were promptly corrected, thereby refuting Mr. Mayes' claims that Ace refused to pay him for his hours. *See* Dkts. #38-1 at 2; #38-4 at 9; #38-2 at 2. To the extent any paychecks were delayed, Defendants have likewise produced evidence reflecting that delays were owed to Mr. Mayes' own failure to timely submit his time cards. Dkt. #43-1 at 9. Mr. Mayes has provided no evidence to rebut Defendants' claims and merely repeats his claim that he "worked for about 112 hours and wasn't paid for it until at least a month later" and then "wasn't paid for all the hours [he] worked for." Dkt. #36 at 1. Again, conclusory statements, with no supporting evidence, are insufficient to defeat summary judgment. Finally, to the extent Mr. Mayes requests that the Court defer or deny summary judgment because Defendants withheld payroll records during discovery, he has failed to meet the required standard under Rule 56(d) for the same reasons set forth above regarding his disparate treatment claim.

The record, construed in the light most favorable to Plaintiff, does support a prima facie case of retaliation as to Mr. Mayes' cut hours. It is undisputed that Mr. Mayes engaged in protected activity on December 16, 2017 when he reported discrimination to Mr. Ohashi. On one hand, the record plainly contradicts Mr. Mayes' claims that Ace started cutting his hours three days after he texted Mr. Ohashi. For the pay period starting December 17, 2017, Mr. Mayes was scheduled for 36.6 hours, Dkt. #35-3 at 6, and the following week, starting December 24, 2017, he was scheduled for 41.5 hours—the most he had worked to date. *Id.* at 7. Nevertheless, construing the facts in the light most favorable to Plaintiff, Mr. Mayes engaged in his protected activity on December 16, 2017, and the week of December 31, 2017, Ace started to reduce his hours. *See id.* at 8-12. Although the adverse employment actions were two weeks delayed from the protected activity, the causal element is construed broadly at the prima facie stage. *Shokri*,

311 F. Supp. 3d at 1222 (citing *Poland v. Chertoff,* 494 F.3d 1174, 1180 n. 2 (9th Cir. 2007) (citation omitted)). For these reasons, the record supports a prima facie case.

However, like his disparate treatment claims, Mr. Mayes' retaliation claims do not survive beyond the prima facie stage. Mr. Mayes has not argued that Defendants lacked legitimate business reasons for the reduced hours or the paycheck issues. Conversely, Defendants have explained that due to the cyclical nature of the holidays and the fact that Mr. Mayes stopped showing up to work after January 3, 2018, his hours were cut starting December 31, 2017. Dkt. #35-4 at 1; Dkt. #35-2 at ¶4.

Mr. Mayes presents no evidence that any of these incidents were driven by retaliatory intent following his December 16, 2017 text to Mr. Ohashi. Instead, as described above with respect to his disparate treatment claims, he repeats conclusory allegations with no factual support. *See* Dkt. #36 at 1-2. Again, Plaintiff's case cannot survive summary judgment with unsupported allegations. Without any evidence, a reasonable jury cannot find in his favor, and summary judgment is warranted. *See Univ. of Tex. Sw. Med. Ctr.*, 570 U.S. at 338 (plaintiff's ultimate burden is to show that the adverse employment action would not have occurred but for the protected activity); *Allison v. Housing Authority of the City of Seattle*, 118 Wash.2d 79, 821 P.2d 34, 37 (1991) (under the WLAD, plaintiff must show that protected activity was a substantial factor in the adverse employment action).

Without any evidence, Mr. Mayes' case is built purely upon inference. While the non-movant at summary judgment is entitled to all reasonable inferences from the evidence, "at some point, the reasonable jury cannot continue inferring without actual evidence." *Shokri*, 311 F. Supp. 3d at 1233; *see also Nelson v. Pima Cmty. Coll.,* 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary

judgment."). Accordingly, summary judgment dismissal of his discrimination and retaliation claims is appropriate.

## IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's Motion for Summary Judgment is also pending before the Court. Dkt. #39. Plaintiff appears to seek summary judgment on all his claims. Because the Court has determined that Defendants are entitled to summary judgment, the Court denies Plaintiff's Motion for Summary Judgment as moot.

## V. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that:

(1) Defendant's Motion for Summary Judgment (Dkt. #35) is GRANTED. All of Plaintiff's claims are DISMISSED.

(2) Plaintiff's Motion for Summary Judgment (Dkt. #39) is DENIED.

(3) This case is CLOSED.

DATED this 20th day of March 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE